UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 89-162-2 (RCL)<br>MELVIN D. BUTLER, )<br>)<br>Defendant. )<br>) | |

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 89-162-4 (RCL)<br>JAMES ANTONIO JONES, )<br>)<br>Defendant. )<br>) | |

## MEMORANDUM OPINION AND ORDER

Now before this Court are two motions, each seeking sentence reductions under 18 U.S.C. § 3582(c)(2) and based upon the retroactive application of Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G."). The first motion was filed by defendant Melvin Butler [145, 150]; the second by defendant James Antonio Jones [154]. Upon consideration of the motions, the entire records herein, the applicable law, and the reasons set forth below, defendants' Motions to Reduce Sentences pursuant to 18 U.S.C. § 3582(c)(2) will be DENIED.

1

## BACKGROUND

In 1990, defendants Butler and Jones were sentenced for their roles as organizers and managers in the sweeping cocaine conspiracy run by co-defendant Rayful Edmund III. Each defendant was an essential and high-ranking member of Edmund's drug ring, exercising near complete control over various aspects of the enterprise. According to the Presentence Investigation Report ("PSR"), defendant Butler was one of three people—along with Rayful Edmund and Edmund's partner, Tony Lewis—who bore primary responsibility for maintaining and directing the organization. PSR ¶ 24, Aug. 20, 1990 (stating that "these three individuals" were the most "culpable"). Defendant Butler was Edmund and Lewis's primary "broker" for illegal drugs, routinely obtaining cocaine and cocaine base from his contacts in Los Angeles and then arranging for the drugs to be shipped across the country. *Id.* Butler and his drug supply sustained the organization, allowing it to thrive, expand, and develop into the far-reaching and sophisticated operation that it became. *See, e.g., United States v. Edmund*, 52 F.3d 1080, 1085 (D.C. Cir. 1995) ("[T]he Edmond organization received the cocaine that fueled its activities from Colombia through a series of transactions with Melvin Butler in California."). Moreover, it nearly goes without saying that defendant Butler "recruited and supervised others" when acquiring and transporting immense quantities of drugs from the west coast. PSR ¶ 24, Aug. 20, 1990. After considering the singular role defendant Butler played in procuring the drugs and the independence he exercised in doing so, it is no wonder that the presentencing report identified him as an indispensable leader of the criminal organization—just as culpable as Rayful Edmund himself. *Id.*

Like defendant Butler, defendant Jones was a crucial participant in the drug ring. His presentencing report identifies him, along with three others, as "just below" Edmund, Lewis, and

Butler in the organization's hierarchy. PSR ¶ 34, Feb. 9, 1990. Jones was one of the organization's four "enforcers," meaning that he would "carry weapons" and "use force . . . to keep rival drug distributors from distributing drugs" in neighborhoods and on blocks claimed by Edmund and his co-conspirators. *Id.* at ¶ 33. Additionally, defendant Jones "supervised the street lieutenants, collected monies, recruited members for the organization, paid them, and directed their activities." *Id.* at ¶ 34. Suffice it to say, neither of these defendants was a low-level drug offender.

After his conviction, defendant Butler was ultimately sentenced to 405 months in federal prison. Defendant Butler's original conviction and sentencing were subject to a series of appeals and post-sentencing motions, the details of which are explained in an Order [110], denying an earlier motion requesting a sentence reduction under 18 U.S.C. § 3582(c)(2). In December 1989, a jury convicted defendant Butler of one count of Conspiracy to Distribute and to Possess with the Intent to Distribute over Five Kilograms of Cocaine and one count of Unlawful Use of a Communications Facility. At sentencing on September 4, 1990, Judge Charles Richey increased defendant Butler's base level offense two levels for the use of guns in connection with the drug trafficking conspiracy, three levels for his role as a manager in the offense, and two levels for obstruction of justice. Judge Richey also granted a two-level reduction for defendant Butler's acceptance of responsibility, resulting in a guideline range of 324 to 405 months imprisonment. Judge Richey then sentenced defendant to the top of the range.

After sentencing defendant Butler, Judge Richey sentenced defendant Jones to 393 months. Defendant Jones's initial sentencing also underwent several appeals and post-sentencing motions; more specific information can be found in a Memorandum Opinion [137]. In December 1989, a jury convicted defendant Butler of conspiracy to violate narcotics laws under 21 U.S.C. §

846. At sentencing in September 1990, Judge Richey enhanced defendant Butler's sentence for the use of guns in connection with the conspiracy and for his involvement as a supervisor of the organization. These factors produced a guideline range of 324 to 405 months, and Judge Richey sentenced Defendant Jones near the top of the range.

On April 30, 2014, the U.S. Sentencing Commission submitted to Congress Amendment 782 of the U.S. Sentencing Guidelines, proposing a downward revision to the applicable sentencing ranges for drug trafficking offenses. Importantly, on July 18, 2014, the Commission then then passed Amendment 788 to allow the Amendment 782's revisions to be applied retroactively. On November 1, 2014, Amendment 782 and its retroactive application became effective.

With a few exceptions, Amendment 782 reduces by two the offense levels assigned in the Drug Quantity Table, as described in U.S.S.G. § 2D1.1. In fact, the changes are sufficiently sweeping that the Amendment has been informally referred to as "all drugs minus two." In light of the extensive nature of the revisions, the Commission has required that any sentence reduction based on the retroactive application of Amendment 782 not take effect until November 1, 2015. This delay is designed to allow the courts, probation officers, and the Bureau of Prisons the time they need to consider and process motions relating to Amendment 782's retroactive application and to prepare release plans for offenders, where applicable. *See* U.S.S.G. App. C, Amend. 788 at 87 (2014). ("The administrative burdens of applying Amendment 782 retroactively are significant but manageable given the one-year delay in the effective date, which allows courts and agencies more time to prepare.").

4

Shortly after Amendments 782 and 788 became effective on November 1, 2014, the defendants filed the instant motions to reduce their sentences pursuant to the Amendments and to 18 U.S.C. § 3582(c)(2).

## LAW

Federal courts normally do not have the authority to modify a sentence once it has been imposed; however, this general rule is subject to a few narrow exceptions—including a statutory exception under 18 U.S.C § 3582(c)(2). *See, e.g., Dillon v. United States*, 560 U.S. 817, 824 (2010) ("Section 3582(c)(2) establishes an exception to the general rule of finality."). Section 3582(c)(2) grants a district court jurisdiction and discretion to reduce a defendant's sentence if that sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C § 3582(c)(2). In such instances, the Court "may reduce the term of imprisonment" only after considering the factors set forth in § 3553(a) and ensuring the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C § 3582(c)(2). The applicable policy statement is contained in § 1B1.10 of the U.S.S.G., which the Supreme Court has ruled is binding on courts conducting § 3582(c)(2) proceedings. *Dillon*, 560 U.S. at 828-30 (rejecting the argument that § 1B1.10 of the U.S.S.G. be treated as "advisory" under § 3582(c)(2)).

In that same opinion, the Supreme Court articulated a two-step test for courts to follow when considering a motion for a sentence reduction under § 3582(c)(2). First, federal courts are to "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. Second, if § 3582(c)(2) authorizes a sentence reduction, courts must decide whether or not a reduction is "warranted in whole or in part under the particular circumstances of the case." *Id.*

5

In determining if a sentence reduction is warranted, § 3582(c)(2) instructs courts to consider the applicable 18 U.S.C. § 3553(a) factors. *Dillon*, 560 U.S. at 827 ("At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors."). Additionally, any sentence reduction made under § 3582(c)(2) must be consistent with § 1B1.10 of the U.S.S.G. *Id.* at 821. This section states that courts "shall" also consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" when determining if a reduction is warranted. U.S.S.G. § 1B1.10 cmt. n. 1(B)(ii). Lastly, also according to § 1B1.10, courts "may" take into account post-sentencing conduct of the defendant after the imposition of the original term of imprisonment. *Id.* at 1(B)(iii). The § 3553(a) factors—again, factors that courts must look to when determining if a sentence reduction is warranted—include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Importantly, § 3582(c)(2) "unambiguously grants discretionary authority to the district court" when determining if a sentence reduction is warranted. *United States v. Lafayette*, 585 F.3d 435, 439 (D.C. Cir. 2009); *see also Dillon*, 560 U.S. at 827 (interpreting § 3582(c)(2) to instruct federal courts to consider any applicable § 3553(a) factors when determining "whether, in [the court's] discretion, the reduction . . . is warranted"); *United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013) (citing to *Lafayette* and noting further that "district courts retain broad authority to control Section 3582(c)(2) proceedings"). Indeed, the statute plainly states that

district courts "may" grant a sentence reduction once a defendant is determined to be eligible. 18 U.S.C. § 3582(c)(2); *see also Lafayette*, 585 F.3d at 439 (quoting the same language); *United States v. Wilson*, 716 F.3d 50, 52 (2d Cir. 2013) ("A retroactive amendment to the Guidelines merely authorizes a reduction in a sentence; it does not require one." (quoting *United States v. Rivera*, 662 F.3d 166, 170 (2d Cir. 2011))).

Section 3582(c)(2) therefore not only gives federal courts the power to reduce certain prison sentences, but it also permits courts to decline to exercise that power and leave otherwise eligible sentences unchanged. *Cf.* U.S.S.G. § 1B1.10 cmt. background ("The authorization of such a discretionary reduction does not . . . entitle a defendant to a reduced term of imprisonment as a matter of right."). Therefore, under § 3582(c)(2), it falls upon federal courts to decide whether or not an authorized sentence reduction is also warranted—provided that the decision is shaped by the factors set forth in § 3553(a) and a consideration of the dangers posed by early release. *See* 18 U.S.C § 3582(c)(2); U.S.S.G. § 1B1.10 cmt. n. 1(B).

## DISCUSSION

The Court denies these motions after finding that the sentence reductions are unwarranted according to the factors provided in § 3553(a) and the terms of U.S.S.G. § 1B1.10. In ruling on these motions, the Court is bound by and follows the two-step test articulated in *Dillon*. In looking to the test's first step, the Court finds that it is authorized to reduce the defendants' sentences. On this point, there is no dispute. For defendant Butler, the retroactive application of Amendment 782 decreases his base offense level from 41 to 39, resulting in a new imprisonment range of 262 to 327 months and making him eligible for release on November 1, 2015. In defendant Jones's case, Amendment 782 likewise retroactively decreases his imprisonment range to 262 to 327 months, also authorizing his release as early as November 1, 2015.

But the inquiry does not end there. Looking to the § 3553(a) factors, the threat that early release poses to their communities, and the defendants' post-sentencing conduct, the Court has determined that early release is unwarranted. The first § 3553(a) factor—the nature and circumstances of the offense and the history and characteristics of the defendants—firmly supports that conclusion. 18 U.S.C. § 3553(a)(1). Each defendant was a key player in one of the largest drug conspiracies in the history of this city. In defendant Butler's case, he was found to be just as culpable as Rayful Edmund, the "acknowledged leader" of the notorious crime syndicate. PSR ¶ 24, Aug. 20, 1990. Defendant Butler was one of the drug ring's architects, serving as an original source of the cocaine and cocaine base that was later distributed in bulk throughout the Washington D.C. region. Similarly, defendant Jones was an "enforcer," answering only to the organization's three most powerful individuals. PSR ¶ 34, Feb. 9, 1990. Therefore, in light of these facts, "the circumstances of the offense and history and characteristics of the defendant[s]" weigh strongly in favor of a finding that early release is unwarranted. 18 U.S.C. § 3553(a)(1).

It is worth emphasizing that in a § 3582(c)(2) hearing, courts are not only permitted to consider facts assessed at the initial sentencing proceeding but they are often required to do so. As a practical matter, § 3582(c)(2)'s instruction to "consider[] the factors set forth in section 3353(a)" makes this overlap nearly inevitable. For example, it is difficult to imagine how a judge would carry out the statute's directive to consider historical factors and the "nature and circumstances of the offense" without taking into account details and events that were also used to set the prisoner's original sentence. 18 U.S.C. § 3553(a)(1); *cf. Lafayette*, 585 F.3d at 439 (noting that the "district court's discretion must be guided" by factors including "the nature and circumstances of the offense and the history and characteristics of the defendant" (quoting 18

U.S.C. § 3553(a)(1))). Not surprisingly, Courts of Appeals from around the country have come to the same conclusion. *See United States v. Dunn*, 728 F.3d 1151, 1159-60 (9th Cir. 2013) ("There is nothing in [§ 3582(c)(2)] to suggest that, in deciding whether to grant or deny a reduced sentence, a district court cannot consider the defendant's criminal history even though it was reflected in his sentencing range."); *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012) ("[T]he nature and circumstances of the underlying offense are eminently proper considerations in a motion under § 3582(c)(2).").

In addition to historical considerations and the nature and circumstances of the offense, § 3553(a)(2)(A) also favors a finding that the sentence reductions are unwarranted. Mainly, this provision highlights "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Once again, neither defendant was a minor drug dealer; in fact, it may be imprecise to call them "drug dealers" at all. In defendant Butler's case, he did not "deal" drugs to customers, so much as he brokered the sale of massive quantities of drugs from one criminal enterprise to another. For defendant Jones, there is a slightly different, yet equally significant twist—he did not personally deal drugs, but rather he assisted in orchestrating, supervising, and directing the years-long and thorough dissemination of drugs throughout Washington D.C. By any measure, their offenses were "serious." And by invoking § 3553(a), § 3582(c)(2) directs this Court to consider that seriousness when determining if a sentence reduction is warranted, lending additional support to the Court's central finding that early release is inappropriate for these defendants.

Lastly, the final § 3553(a) factor, "the need to provide restitution to any victims of the offense," also favors a finding that these sentence reductions are unwarranted. 18 U.S.C. § 3553(a)(7). Edmund's organization enabled drug use and addiction on a scale that up until that

point was unprecedented and largely unimaginable in this city. While it was flourishing—and it flourished for years—the organization regularly procured and distributed hundreds of kilos of cocaine and cocaine base, often spending millions of dollars to acquire a single shipment. *See United States v. Edmund*, 52 F.3d 1080, 1086 (D.C. Cir. 1995) (describing a single drug transaction in 1988 valued at "three or four" million dollars (citation omitted)); *id.* at 1085 (describing a 1988 trip to Los Angeles where "Edmund and Butler obtained approximately 200 kilograms of 'cooked' cocaine, then packaged it in kilogram lots"); *id.* ("James Mathis helped to deliver cocaine from Butler from Los Angeles to Washington. Mathis flew to Washington about eight times with suitcases full of kilogram-sized bricks of cocaine."). Importing and distributing illegal and highly addictive drugs on that scale has an immense and devastating impact; in those quantities, it can cripple neighborhoods and destabilize cities. Without fail, the drugs' sudden and pervasive availability instills disorder, tears apart families, and stimulates violence. The harm defendants caused to individuals and communities across our city is immeasurable and in many cases irreversible. Defendant Butler and Jones's victims may be unknown and diffuse, but they are real. The restitution they deserve weighs against a finding that early release is warranted.

Further, the Court recognizes that when evaluating § 3553(a)(7)'s emphasis on restitution, it is possible for drug trafficking to be a nonviolent or even victimless crime. But for these defendants, such a suggestion is absurd. Running a drug trafficking enterprise at defendants Butler and Jones's sophisticated level is an inherently violent activity—it relies upon and perpetuates the reflexive and conspicuous use of guns and lethal force. Without question, gun violence and intimidation to ward off competitors were enmeshed with the other aspects of the defendants' criminal organization and served as necessary components of the group's prolonged

success. Reflecting this reality, both defendants received sentence enhancements for using guns in connection with their underlying drug trafficking crimes. And for defendant Jones in particular, his role did even not directly concern the sale of drugs; instead, he was primarily responsible to "carry weapons" and "use force . . . to keep rival drug distributors from distributing drugs." PSR ¶ 34, Feb. 9, 1990. Referring to the concerns articulated in both § 3553(a)(1) and § 3553(a)(7), the Court concludes defendants' use of firearms and the fundamentally violent nature of their crimes support a finding that early release is unwarranted.

Like the § 3553(a) factors, the Court is also bound to consider the "nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" and finds that this consideration also cuts against the defendants' motions. U.S.S.G. § 1B1.10 cmt. n. 1(B)(ii). Defendants were critical to the design and execution of a dominant, enduring, and citywide drug operation. It is true that each man is now middle aged; however, they both possess the skills, knowledge, and proven resolve necessary to procure and distribute illegal drugs on a massive scale. Therefore, the Court finds that they continue to pose a threat to the community, a consideration that weighs in favor of a finding that the sentence reductions are unwarranted.

In addition to the § 3553(a) factors already discussed and the dangers of early release, the Court has also considered the factors defendants highlight to support their motions. In defendant Butler's case, he "has been free of disciplinary issues during his incarceration" and a mentor to young male inmates. Def. Butler's Mot., ECF No. 145. Moreover, he notes that a sentence reduction would avoid "unwarranted sentence disparities under § 3553(a)(6)." *Id.* In evaluating his § 3562(c)(2) motion, U.S.S.G. § 1B1.10 permits the Court to consider defendant Butler's post-sentencing conduct. Cmt. n. 1(B)(iii). Furthermore, such conduct "sheds light" on the

concerns expressed in § 3553(a)(2)(B)-(C), factors that courts must consider when determining if a sentence reduction is warranted. *Pepper v. United States*, 562 U.S. 476, 478 (2011) (discussing § 3553(a)(2)(B)'s attention to "adequate deterrence of criminal conduct" and (C)'s goal to "protect the public from further crimes of the defendant"). Therefore, following this mandate, the Court has taken into account defendant Butler's model disciplinary record as an inmate, his rehabilitation efforts, and his educational activities, all factors the Court finds support a reduced sentence. Moreover, the Court acknowledges that it is bound to consider § 3553(a)(6)'s concern for disparate sentencing, another factor favoring defendant Butler's early release. However, in light of the utterly vital role defendant Butler played in the drug ring, these factors do not outweigh the other, more commanding considerations previously discussed. Under the totality of the circumstances and in consideration of all applicable § 3553(a) factors, the Court finds defendant Butler's requested sentence reduction to be unwarranted.

Like defendant Butler, a weighing of the relevant factors concerning defendant Jones also results in a finding that a sentence reduction is unwarranted. To persuade the Court that a reduced sentence is deserved, defendant Jones stresses his record of "post-conviction/incarceration rehabilitation," with special emphasis on his educational activities. Def. Jones's Mot., ECF No. 146. The Court notes these educational accomplishments and has considered defendant Jones's impressive disciplinary record, which is unblemished aside from one infraction for assault without serious injury in 2013. Moreover, as was the case with defendant Butler, the Court has considered the concern for disparate sentencing articulated in § 3553(a)(6). Without question, looking to § 3553(a), these facts support a finding that a sentence reduction is warranted. Once again, however, in consideration of all relevant § 3553(a) factors, the Court has determined that these considerations do not overcome the other, more compelling

features of defendant Jones's record. Looking to all applicable § 3553(a) factors, the Court therefore finds defendant Jones's motion for a reduced sentence to be unwarranted.

To put it bluntly, the Court is surprised and disappointed by the United States Attorney's position to not oppose the present motions. It is puzzling to see the government shrug off the starkly violent and calculating natures of the underlying crimes as it allows the defendants' nearly exclusive focus on their post-conviction conduct to go unchallenged. The government's inaction is particularly peculiar in light of Amendment 788's delayed November 1, 2015 release date—a one-year postponement that was designed to in part to "give courts adequate time to obtain and review the information necessary to make an individualized determination in each case of whether a sentence reduction is appropriate." U.S.S.G. App. C, Amend. 788 at 88 (2014). This individualized determination, of course, requires a full consideration of the § 3553(a) factors. With reference to these factors, the Court struggles to understand how the government could condone the release of defendants Butler and Jones, each convicted of high-level, sophisticated, and violent drug trafficking offenses.

But the U.S Attorney's decision is not only surprising; it is seemingly contrary to the previously stated positions of the Department of Justice. In June 2014, the Sentencing Commission conducted a public hearing to field comments from stakeholders concerning its proposal to apply of Amendment 782's downward revisions retroactively. At the hearing, Sally Yates, currently Deputy Attorney General and then the United States Attorney for the Northern District of Georgia, was present to express the views of the Department of Justice. Sally Quillian Yates, U.S. Att'y, N. Dist. Ga., Statement Before U.S. Sentencing Commission in the Public Hearing on Retroactivity of 2014 Drug Amendment 105-18 (June 10, 2014) (transcript available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings

/20140610/transcript.pdf). In clear and direct language, the Justice Department rejected the Sentencing Commission's proposal for Amendment 782's blanket retroactive application. Indeed, Yates stated, "we believe that retroactivity in the drug amendment should be limited to lower-level non-violent drug offenders without significant criminal histories." *Id.* at 111.

Furthermore, the Department reasserted its position that "retroactive application of the guidelines amendment should be rare," *id.* at 115, and proposed various wholesale exclusions to the Sentencing Commission's plan to indiscriminately apply Amendment 782 retroactively. Yates relayed the Department of Justice's position: "retroactivity [of Amendment 782] would be limited to a class of non-violent offenders who have limited criminal history, that did not possess or use a weapon and this will only apply to the category of drug offender who warrants a less severe sentence." *Id.* at 117. More specifically, in the Department's view "an enhancement for possession of a dangerous weapon pursuant to Section 2D1.1, an enhancement for using, threatening, or directing the use of violence pursuant to Section 2D1.1(b)(2), an enhancement for playing an aggravating role in the offense pursuant to Section 3D1.1,[1] or an enhancement for obstruction of justice" should uniformly exclude any offender from eligibility for early release under "all drugs minus two." *Id.* at 116.

In these cases, both defendants received enhancements for possession of dangerous weapons pursuant to 2D1.1. Moreover, defendant Butler received an additional enhancement for obstruction of justice, and each defendant received an adjustment for the management role they played in the offense under 3B1.1. Plainly and in absolutely no conceivable way, were these

---

[1] Although Yates identified section 3D1.1 as a disqualifying enhancement, it appears she meant section 3B1.1. Section 3B1.1 is titled "Aggravating Role" and applies upward sentencing adjustments when the defendant served as an "organizer, leader, manager, or supervisor" in the offense. Section 3D1.1 is titled "Procedure for Determining Offense Level on Multiple Counts."

defendants "lower-level non-violent drug offenders." *Id.* at 111. In light of the position taken by the Department of Justice in June 2014, the U.S. Attorney's current decision to not oppose these motions is as unexpected as it is opaque.

In spite of its findings, the Court does not reject these motions lightly. Make no mistake, there are prisoners that have been unfairly or disproportionately sentenced for drug-related crimes and are deserving of early release according to Amendments 782 and 788. In a substantial number of cases—particularly where Congressionally imposed mandatory minimum sentences were applied—sentences were overly harsh, and redress is appropriate. Additionally, some of the prisoners who deserve reduced sentences may even have received sentencing enhancements for the use of guns or for playing a management role. The Court today in no way suggests that such enhancements are disqualifying factors; they are considerations in a holistic scheme to be weighed appropriately on a case-by-case basis. The Court fully embraces its role under § 3582 to reduce prison terms when warranted and agrees with the Sentencing Commission's adaptability, initiative, and continued commitment to a balanced and thoughtful approach to sentencing. If the defendants were low-level drug dealers, as opposed to criminal kingpins, this Court may well have found the modifications to be warranted.

But those are not the cases presently before this Court. After thorough consideration of the § 3553(a) factors, the threats early release poses, and the facts and arguments presented in defendants' motions, the Court finds that early release is unwarranted for both defendant Butler and defendant Jones. As discussed, when the U.S. Sentencing Commission voted unanimously to apply the Amendment 782 retroactively, it deliberately decided that no prisoners could be released pursuant to the Amendment before November 1, 2015. In the Commission's judgment and as stated by the Chair of the Commission, "[t]he delay [would] help to protect public safety

15

by enabling appropriate consideration of individual petitions by judges." News Release, U.S. Sentencing Comm'n, U.S. Sentencing Commission Unanimously Votes to Allow Delayed Retroactive Reduction in Drug Trafficking Sentences (July 18, 2014). With ample time and a robust record, this Court has given the "appropriate consideration" to the "particular circumstances of the case[s]" before it. *Dillon v. United States*, 560 U.S. 817, 827 (2011). For the reasons stated herein, the Court finds the reduced sentences are unwarranted. The motions are therefore DENIED.

## CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that the defendants' motion are **DENIED**.

**SO ORDERED** this __16th__ day of September 2015.

ROYCE C. LAMBERTH
United States District Court