UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :
                           :
          v.               :   Criminial No. 89-0162-01  (CRR)
                           :
RAYFUL EDMOND III, et al.  :

<u>GROUP ONE DEFENDANTS</u>

MELVIN BUTLER - 02

KEITH COOPER - 10

JAMES ANTONIO JONES - 04

TONY LEWIS - 06

BERNICE HILLMAN MCCRAW - 19

DAVID MCCRAW - 20

JERRY MILLINGTON - 05

JOHN MONFORD - 22

ARMARETTA PERRY - 23

EMANUEL SUTTON - 03

RAYFUL EDMOND III - 01

**FILED**

SEP 1 0 2019

Clerk, U.S. District and
Bankruptcy Courts



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :
:
v. : Criminal No. 89-0162- CRR
:
RAYFUL EDMOND III et al. :

FILED

MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia respectfully submits the following memorandum in aid of sentencing.

1. On December 6, 1989 the defendant Rayful Edmond III and ten of his co-defendants, including many of his family and friends, were convicted of conspiracy to distribute over five kilograms of cocaine as well as related charges. Edmond himself was also found to have headed a continuing criminal enterprise which flourished on the streets of the District of Columbia, distributing over 150 kilograms of cocaine from 1985 until 1989.

2. We know the Court is well aware of the massive amount of evidence which was presented during the course of this three month trial. Thus we do not intend to repeat it. Rather, we focus in this memorandum on the <u>effects</u> of the conduct of these eleven defendants on this city and its residents. These issues could not be addressed before the jury, but we ask the Court in imposing sentence on each defendant in this case to recognize the devastating impact that drugs, particularly crack cocaine, has had on our society.

3. The organization headed by Rayful Edmond III was unusual in


COURTRAN

-2-

this area for its size and manner of operation. It was one of the largest organizations in the District of Columbia area, often employing up to one hundred and fifty (150) workers. It was run efficiently and smoothly, with regular shifts and a payroll, delineated functions for its employees, and lavish, often irresistible bonuses such as cars and chauffeured limousine trips. But unlike the usual services of a legal business, Edmond and his co-conspirators peddled not food or sustenance, but the destruction of careers, families and even death.

4. The importation and distribution of cocaine effects not only its actual users , but many other innocent victims. Young children can no longer play in their schoolyards when drugs are being openly sold. Their parents cannot walk down their own streets past daylight, and the lure of quick, comparatively easy money attracts many young people away from school and into a flashy, dangerous and ultimately tragic lifestyle.

5. The Edmond organization deliberately enticed children into the business of dealing cocaine. Stevenson MacArthur, Harry Sullivan Jr,("Whitey"), Hampton Murphy, Troy Johnson, and Cornelius McDonald are examples of young boys who started early in the drug trade and were seduced by the lifestyle of their "mentor" Rayful Edmond III. They all have been convicted of drug trafficking. Another of Edmond's followers, Donnell Windley, a juvenile who sold cocaine on the streets for Edmond, was suspected of murder, but was himself killed before he could be arrested.

-3-

6. The powerful and destructive influence of Edmond was recently starkly exhibited in a conversation recounted in the press. A 15 year old boy, talking about his future, was asked what he valued most. His answer was revealing: "First, I'd get the money, then I'd buy the clothes and the jewelry. Then all the girls would want me. And I'd probably drop out of school. I wouldn't need that stuff." When asked what his future plans were he answered, "[T]he big time. Like Rayful." Washington Post, 2/9/90, p. A18.

7. Mr. Edmond and his "colleagues" were unscrupulous in their pursuit of cold cash, and were unceasing in their desire to make and spend money. Expensive cars, thousand dollar shirts, gold medallions worth $60,000, diamond encrusted Rolex watches, swimming pools, hundreds of tennis shoes, and wads of $100 bills characterized their lifestyles.

8. Equiped with pagers, car phones, and other electronic gadgetry, Edmond and his co-conspirators were profiteers of human misery. During the years that Edmond and his friends and family ran the "Strip" in Northeast Washington, they encouraged numerous other people to work with them. Their impact, as a group, was widereaching and deeply entrenched. Throughout the entire course of the investigation of this organization the fear of retaliation haunted those persons who had information. Mothers, who wanted to stop their sons from getting involved in the drug trade, were afraid themselves to challenge its hierarchy.

-4-

9. The government proved at trial that Edmond and his organization distributed over 150 kilograms onto the streets of D.C. during the four year course of this conspiracy. Each kilogram, 1000 grams, was divided and packaged for resale in packages as small as one-half gram. Each half gram was sold for $50.00. Even assuming that the wholesale price of a kilogram was $20,000, as mentioned by Steve MacArthur at trial, each kilogram would mean a profit of between $80,000 and $100,000.

10. With drugs, comes violence. As the Court knows, three of the defendants in this case are also charged with murders committed during the course of, and in furtherance of the conspiracy. We urge the Court to acknowledge the intolerable nature and extent of this conspiracy by imposing the maximum possible sentence in each and every case. We request the imposition of the highest sentence in the Guideline range [1] on each count as to each defendant, with individual counts to run consecutively. Our community has made it abundantly clear that it will no longer tolerate activities, or organizations such as those conducted by Edmond, his family, friends and employees. We implore this Court to do the same.

---

[1] We expect that sentencing hearings will be necessary as to many of the defendants. We suggest that the Court hold a hearing as to factual disputes in the Official Version with all defendants and their counsel present, to be followed by individual hearings concerning upward or downward adjustments requested for a particular defendant.

-5-

Respectfully submitted,

JAY B. STEPHENS
UNITED STATES ATTORNEY

BY: _____
Betty Ann Soiefer
Assistant United States Attorney

_____
Robert G. Andary
Assistant United States Attorney

_____
Barry M. Tapp
Assistant United States Attorney

Certificate of Service

I hereby certify that a copy of the foregoing memorandum in Aid of Sentencing was mailed, this 12th day of February, 1990 to counsel for all defendants in Trial #1, U.S. v. Edmond.

_____
Betty Ann Soiefer
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
(202) 272-9059